Andrew Gerber
KUSHNIRSKY GERBER PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 882-1320
*Attorneys for Plaintiff Raeha Keller*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| RAEHA KELLER, | : | Case No. 24-CV-149 |
| | : | |
| | : | **COMPLAINT FOR** |
| *Plaintiff,* | : | **COPYRIGHT** |
| v. | : | **INFRINGEMENT** |
| | : | **AND VIOLATIONS OF THE** |
| | : | **DMCA** |
| SPIRIT HALLOWEEN SUPERSTORES LLC, | : | |
| | : | |
| *Defendant.* | : | |
| | : | **JURY TRIAL DEMANDED** |

Plaintiff Raeha Keller ("Plaintiff" or "Ms. Keller"), by and through her undersigned attorneys, for her complaint against defendant Spirit Halloween Superstores LLC ("Defendant" or "Spirit Halloween") alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is an action for copyright infringement brought by an independent artist against the largest Halloween retailer in the United States.

2.      Every fall, Defendant takes over vacant retail space in strip malls and shopping centers across the country and operates Halloween "pop-up" stores selling Halloween costumes, accessories, decorations, and more.

3.      Defendant operates nearly 1,500 pop-up stores each season but operates its e-commerce website, located at spirithalloween.com (the "Spirit Halloween Website"), year-round.

4.     In June 2021, Plaintiff corresponded with one of Defendant's senior buyers regarding the possibility of a wholesale relationship between the parties. Although Plaintiff's correspondence was forwarded to the "store team" at Spirit Halloween, Plaintiff did not hear anything further from Spirit Halloween.

5.     Despite Plaintiff's efforts to establish an official relationship with Defendant, Defendant opted instead to copy one of Plaintiff's original designs and sell an infringing version of it in its retail stores and on the Spirit Halloween Website.

6.     When Plaintiff notified Defendant of its infringing conduct, Defendant frustrated all settlement attempts by repeatedly and definitively refusing to provide Plaintiff with obviously relevant information and documentation that Plaintiff repeatedly requested.

7.     Specifically, Defendant refused to provide Plaintiff with any data, records, and documentation regarding Spirit Halloween's sales of the infringing product, leaving Plaintiff no choice but to file this suit to uncover the true extent of Defendant's unlawful conduct and damages resulting therefrom.

8.     Plaintiff seeks relief for Defendant's sale and display of infringing products featuring unauthorized and infringing copies of one of her original designs. Plaintiff seeks injunctive relief, monetary damages, costs, attorneys' fees, and such other relief as the Court deems necessary for Defendant's willful copyright infringement, distribution of goods with missing and altered copyright management information, and distribution of goods with false copyright management information.

## **PARTIES**

9.     Plaintiff Raeha Keller is an individual living in Los Angeles, California.  Ms. Keller owns the copyright for the original design at issue and has satisfied the requirements of 17 U.S.C. § 411(a) prior to filing this lawsuit.

10.     Defendant Spirit Halloween Superstores LLC is a New Jersey limited liability company with its principal place of business at 6826 Black Horse Pike, Egg Harbor Township, NJ 08234. Spirit Halloween Superstores LLC does business as Spirit Halloween and operates the Spirit Halloween Website in addition to thousands of retail stores across the country.

## JURISDICTION AND VENUE

11.     This matter is an action for copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.*, distribution of infringing goods with copyright management information removed, and distribution of infringing goods with false copyright management information in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.*

12.     The Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338.

13.     This Court has personal jurisdiction over Defendant because Defendant is based in this District, regularly does business in this District, derives substantial revenue from goods used or services rendered in this District, and expects or reasonably should expect its infringing conduct to have consequences in this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400 because Defendant is located in this District, does regular business here, is subject to personal jurisdiction here, and the alleged unlawful conduct occurred in this District.

## FACTUAL BACKGROUND

### I.     Plaintiff's Original Work

15.     Ms. Keller is a popular independent artist and designer who makes a living selling her original designs in the form of enamel pins, embroidered patches, and other original products under the brand name Ectogasm. Ms. Keller sells a variety of products featuring her original

designs direct to consumers through her e-commerce website and online storefront, located at ectogasm.net, and through authorized third-party websites and retailers. Known for her strange and spooky designs, Ms. Keller has a devoted base of fans and customers.

16.     Ms. Keller's design—the *"Spooky All Year"* Pin (the "Original Design"), shown below—is at issue in this suit.



17.     Ms. Keller obtained federal Copyright Registration No. VA0002136902 for the Original Design on July 15, 2018.

18.     Numerous forms of copyright management information—namely, Ms. Keller's brand name, logo, website address, and social media handle—are included in authorized copies of the Original Design and their packaging, as shown below. This information, which is created and

placed on authorized copies of the Original Design and their packaging via a digital and technological process involving computer software and printing machinery, serves to identify Ms. Keller as the author and copyright owner of the Original Design.



19.   Ms. Keller further conveys such copyright management information in connection with the Original Design on her website, social media accounts, and third-party websites, as shown below.



## II.   **Plaintiff's Attempts to Make Spirit Halloween an Authorized Seller of the Original Design**

20.     Spirit Halloween is the largest Halloween retailer in the United States, selling Halloween costumes, accessories, decorations, and more.

21.     Every fall, Spirit Halloween takes over vacant retail space in strip malls and shopping centers across the United States and operates Halloween "pop-up" stores.

22.     Spirit Halloween operates nearly 1,500 pop-up stores each season but operates the Spirit Halloween Website year-round.

23.     In addition to selling her designs directly to customers, Ms. Keller has wholesale relationships with various popular nationwide retailers and specialty stores such as Dolls Kill and Unique Vintage. Ms. Keller believed Spirit Halloween would be an appealing retailer to sell her products.

24.     On June 1, 2021, in an attempt to establish a wholesale relationship with Spirit Halloween, Ms. Keller sent an email to Molly Stiles, a senior buyer at Spirit Halloween, to discuss the possibility of Spirit Halloween selling Plaintiff's products and designs. Ms. Keller's email to

Ms. Stiles included background information about her business, her contact information, a link to her e-commerce website, and a line sheet showing her various products, including the Original Design, along with the wholesale and suggested retail prices for each. Specifically, the line sheet sent to Spirit Halloween showed that, as of June 2021, the wholesale price for enamel pins featuring the Original Design was $6 per pin, with a suggested retail price of $12.99 per pin.

25.     Ms. Stiles responded to Ms. Keller's email the following day, stating, "Thank you for your email, I forwarded it to the store team, they will definitely reach out if there is a need for this, thanks again!"

26.     According to Ms. Stiles' LinkedIn profile, she is an experienced retail buyer who has worked at Spirit Halloween since 2016. Before she was an employee of Spirit Halloween, Ms. Stiles was a buyer for Macy's and a merchandise manager for David's Bridal.

27.     Although Ms. Stiles forwarded Plaintiff's designs and prices, including for the Original Design, to the "store team" at Spirit Halloween, Ms. Keller was never contacted by anyone at Spirit Halloween regarding her wholesale proposal.

28.     Clearly, however, Spirit Halloween's failure to follow up with Ms. Keller was not because Spirit Halloween did not think there was a "need" for her products. Rather, apparently Spirit Halloween didn't think there was a "need" to pay Ms. Keller when it could instead sell cheap infringing copies of the Original Design.

### III.     Spirit Halloween's Infringing Conduct

29.     Having had no further contact with Spirit Halloween regarding her wholesale proposal, Ms. Keller was shocked to discover in August 2023 that Spirit Halloween was in fact selling a set of enamel pins that included an unauthorized, copy of the Original Design (the "Infringing Product"), in its stores and on its website, as shown below.






30.     Below is a side-by-side comparison of the Original Design and the Infringing

Product. The below comparison makes immediately apparent that the elements, composition,

arrangement, layout, rendering, design, and appearance of the Infringing Product are substantially similar, if not virtually identical, to the Original Design.

| Original Design | Infringing Product |
|---|---|
|  | |

*Detail of Infringing Product*

31.     Spirit Halloween's sale and display of the Infringing Product has been entirely willful. Spirit Halloween never contacted Ms. Keller further regarding selling her designs, as Ms. Stiles suggested Spirit Halloween would in her 2021 correspondence. Instead, Spirit Halloween simply sifted through the line sheet of Ms. Keller's products that Ms. Keller sent to Ms. Stiles and created or sourced an unauthorized, infringing copy of the Original Design.

32.     Spirit Halloween knowingly distributed the Infringing Product with Ms. Keller's copyright management information removed therefrom.  Spirit Halloween knew about the Original Design, knew it belonged to Ms. Keller after previously corresponding with Ms. Keller regarding the Original Design, and was in possession of Ms. Keller's line sheet that confirmed Ms. Keller to be the true author and copyright owner of the Original Design. Despite this knowledge and written documentation in its possession, Spirit Halloween nonetheless sold infringing copies of the Original Design with Ms. Keller's copyright management information removed therefrom.

33.     Spirit Halloween also provided several types of false copyright management information in connection with its sale and distribution of the Infringing Product. Namely, Spirit Halloween affixed the "Spirit Halloween" name and logo to the packaging of the Infringing Product, as shown below.



34.    Spirit Halloween knew that the copyright management information that it affixed to the Infringing Product was false because Spirit Halloween was in possession of Ms. Keller's line sheet and therefore knew that Ms. Keller, not Spirit Halloween, was the true author and copyright owner of the Original Design.

35.    Upon information and belief, Spirit Halloween provided false copyright management information in connection with the Infringing Product for the purpose of giving consumers the impression that Spirit Halloween was the author and copyright owner of the Original Design. Upon information and belief, Spirit Halloween intended that by doing so, it would facilitate the sale of the Infringing Product and conceal the fact that it was infringing the Original Design.

**IV.    Spirit Halloween's Response to Plaintiff's Attempts to Resolve the Matter Before Filing the Complaint**

36.     In November 2023, Plaintiff, via counsel, sent a letter to Spirit Halloween demanding that Spirit Halloween immediately cease and desist from selling the Infringing Product.

37.     Plaintiff's letter to Spirit Halloween included standard requests for information to facilitate out-of-court settlement, including "an accounting of Spirit Halloween's total units sold and total worldwide gross revenue for sales of the Infringing Product."

38.     Much to Plaintiff's surprise, Spirit Halloween vehemently and repeatedly refused to provide details and documentation of the sales information for the Infringing Product, despite Plaintiff asking for this information on multiple occasions. When pressed, Spirit Halloween provided no basis or justification for its refusal to provide such standard documentation and simply repeated its categorical refusal.

39.     Upon information and belief, Spirit Halloween's only reason for withholding such standard sales information and documentation was to bully an independent artist and force her to incur the costs of litigation.

40.     Spirit Halloween's repeated and definitive refusals to provide obviously relevant and non-privileged information and documents frustrated Plaintiff's numerous good-faith attempts to resolve this dispute absent court intervention.

41.     Spirit Halloween's willful infringement and bad faith pre-litigation conduct have led directly and inexorably to the filing of this action. Spirit Halloween left Plaintiff with no option but to file this suit to protect her rights and livelihood and to protect the integrity of her artwork.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT - 17 U.S.C. § 501, *et seq.*

42.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 41 above and incorporates them herein by this reference.

43.     Plaintiff has complied in all respects with the copyright laws of the United States, 17 U.S.C. § 101, *et seq.*, and has secured the exclusive rights and privileges in and to the copyright in the Original Design.

44.     Defendant had access to Plaintiff's Original Design, including, without limitation, through (a) reviewing Plaintiff's June 2021 email to Molly Stiles, a senior buyer at Spirit Halloween, which included a line sheet featuring the Original Design and which was forwarded to Spirit Halloween's "store team"; (b) viewing the Original Design on Plaintiff's website or social media; (c) viewing the Original Design on an authorized third-party retailer's website or social media; and/or (d) purchasing products featuring the Original Design from Plaintiff or an authorized third-party retailer.

45.     Defendant copied, reproduced, distributed, adapted, publicly displayed, and/or sold the Infringing Product without the consent, permission, or authority of Plaintiff.

46.     Defendant's conduct constitutes infringement of Plaintiff's copyright and exclusive rights in the Original Design in violation of 17 U.S.C. §§ 106 and 501.

47.     Defendant's acts of infringement have been willful, intentional, purposeful, and in reckless disregard of and with indifference to the rights of Plaintiff.

48.     Plaintiff is entitled to actual damages and Defendant's profits related to the infringement both in the United States and around the world, pursuant to 17 U.S.C. § 504.

49.     Alternatively, Plaintiff is entitled to select an award of statutory damages, pursuant to 17 U.S.C. § 504.

**SECOND CLAIM FOR RELIEF**
**DISTRIBUTION OF INFRINGING GOODS WITH COPYRIGHT MANAGEMENT**
**INFORMATION REMOVED - 17 U.S.C. § 1202(b)**

50.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 49 above and incorporates them herein by this reference.

51.     The Original Design includes conspicuous copyright management information, which is conveyed in connection with the Original Design and protected under 17 U.S.C. § 1202(b).

52.     Plaintiff further conveys such copyright management information in connection with the Original Design on her website, social media accounts, and third-party websites.

53.     In the process of unlawfully copying, reproducing, distributing, selling, and/or publicly displaying the Infringing Product without the consent, permission, or authority of Plaintiff, Defendant intentionally removed Plaintiff's copyright management information from the Original Design.

54.     Defendant created and sold unauthorized copies of the Original Design with the intent and knowledge that copyright management information had been intentionally removed therefrom.

55.     Defendant intentionally removed Plaintiff's copyright management information knowing, or having reasonable grounds to know, that such removal would induce, enable, facilitate, or conceal the infringement of the Original Design.

56.     Defendant engaged in these activities without the consent or authorization of Plaintiff.

57.     Plaintiff has been injured as a result of these violations of 17 U.S.C. § 1202(b) and is entitled to injunctive relief, impounding of the Infringing Product, damages, costs, and attorneys'

fees.  Pursuant to 17 U.S.C. § 1203(c)(3), Plaintiff may also elect to recover statutory damages of up to $25,000 for each violation of 17 U.S.C. § 1202(b).

### THIRD CLAIM FOR RELIEF
### DISTRIBUTION OF INFRINGING GOODS WITH FALSE COPYRIGHT MANAGEMENT INFORMATION - 17 U.S.C. § 1202(a)

58.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 57 above and incorporates them herein by this reference.

59.     Defendant intentionally and knowingly provided false copyright management information in connection with the Infringing Product. Specifically, Defendant affixed the "Spirit Halloween" name and logo to the packaging of the Infringing Product.

60.     Defendant knew that the copyright management information it conveyed in connection with the Infringing Product was false because Defendant knew that Plaintiff, not Defendant, was the true author and copyright owner of the Original Design.

61.     Defendant knowingly provided such false copyright management information in connection with the Infringing Product with the intent to induce, enable, facilitate, or conceal the infringement of the Original Design.

62.     Defendant engaged in these activities without the consent or authorization of Plaintiff.

63.     Plaintiff has been injured as a result of these violations of 17 U.S.C. § 1202(a) and is entitled to injunctive relief, impounding of the Infringing Product, damages, costs, and attorneys' fees.  Pursuant to 17 U.S.C. § 1203(c)(3), Plaintiff may also elect to recover statutory damages of up to $25,000 for each violation of 17 U.S.C. § 1202(b).

**WHEREFORE**, Plaintiff Raeha Keller demands judgment as follows:

1.     For an order permanently restraining and enjoining Defendant from copying, reproducing, distributing, adapting, selling, and/or publicly displaying the Original Design or any elements thereof; and

2.   For an order requiring destruction of all of Defendant's infringing products, including the Infringing Product, and all marketing, advertising, or promotional materials depicting Defendant's infringing products; and

3.   For an award of actual damages in connection with Defendant's willful copyright infringement; and

4.   For an award of Defendant's disgorged worldwide profits from sales of the Infringing Product; and

5.   For an award of statutory damages under the Copyright Act, 17 U.S.C. § 504(c), as well as attorneys' fees and costs under the Copyright Act, 17 U.S.C. § 505; and

6.   For an award of $25,000 per violation of 17 U.S.C. § 1202(a), an order requiring the impounding of all existing copies of the Infringing Product under 17 U.S.C. § 1203, and an award of Plaintiff costs and attorneys' fees under 17 U.S.C. § 1203; and

7.   For an award of $25,000 per violation of 17 U.S.C. § 1202(b), an order requiring the impounding of all existing copies of the Infringing Product under 17 U.S.C. § 1203, and an award of Plaintiff costs and attorneys' fees under 17 U.S.C. § 1203; and

8.   For reasonable attorneys' fees and costs of suit incurred herein; and

9.   For interest, including prejudgment interest, on the foregoing sums; and

10. For such other and further legal and equitable relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury in this action of all issues so triable.

Dated:    New York, New York              Respectfully Submitted,
            January 9, 2024

                                        KUSHNIRSKY GERBER PLLC

By: _____
Andrew Gerber
andrew@kgfirm.com
27 Union Square West
Suite 301
New York, NY 10003
(212) 882-1320

*Attorneys for Plaintiff Raeha Keller*

17